## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM L. FRAKES,<br>Y56729,<br><br>Plaintiff,<br><br>vs.<br><br>RACHEL DODD,<br>WEXFORD MEDICAL GROUP,<br>SARGENT WARREN,<br>C/O HECKLER,<br>C/O JOHNSON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 23-cv-2963-MAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM & ORDER

**BEATTY, Magistrate Judge:**

Plaintiff William L. Frakes, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Robinson Correctional Center (Robinson), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights (Doc. 1). Specifically, Plaintiff alleges that the defendants failed to protect him by a severe attack from a fellow inmate, and after his return from the hospital they have failed to render adequate follow-up care for his injuries.

The Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that on May 20, 2023, he and a fellow inmate (Inmate Lageese) got into a physical altercation.  Defendant C/O Warren responded and told him to return to his cell.  Plaintiff returned to his cell and fell asleep.  Plaintiff was awakened by "boiling bleach, Vaseline, and muscle rub being thrown on his face."  (Doc. 1 at 7).  He was then repeatedly bludgeoned with a hot pot. Immediately after the attack he saw Inmate Lageese run away with a bloody hot pot.

Defendant Johnson came to his cell and told him to get into a shower to run water on his burns until more staff could respond.  Plaintiff was eventually taken to the healthcare unit, and he was transported by ambulance to the Robinson hospital.  Plaintiff suffered severe second- and third-degree burns, and he spent almost a month at a burn unit of an Indianapolis hospital after he was airlifted away from an Illinois hospital. Plaintiff also had six of his teeth knocked out, and his injuries required eighty staples and six stitches.

Upon return to Robinson, Plaintiff alleges that he needed follow-up medical care and physical therapy, but as of August 6, 2023, he had been provided with little to none

of the needed care.  He sent frequent requests for care, until eventually he was told not to send more requests.  (Doc. 1 at 9).

After describing the attack and following medical issues, Plaintiff circles back to the attack.  He alleges that in the lead-up to the attack, several critical things happened. On May 19, 2023, Defendant Heckler was in the process of confiscating a hot pot from Lageese that he knew had been converted to an improper boiler, but he gave Lageese a chance to keep it if Lageese snitched on other inmates.  Lageese was allowed to keep his hot pot, though nearly 100 others were confiscated in the weeks following the attack.

He also alleges that in the lead-up to the attack, Lageese was observed in the dayroom after hours with his 'associates' eating a homemade cake.  It was also observed that Lageese had all his property packed up.  Affidavits that Plaintiff attached to his complaint give more context for these allegations.  Specifically, other inmates indicate that Lageese's behavior of packing his property was a clear sign that Lageese planned to do something for which he would be relocated, and Lageese actually bragged about his plans to attack Plaintiff before the attack occurred.  Fellow inmates aver that any correctional officer who walked the unit would have known that something was amiss, but that at Robinson many officers tended to ignore things to avoid having to fill-out paperwork.

Based on the allegations in the Complaint, the Court designates the following count:

> **Claim 1:**    **Eighth Amendment failure to protect claim against Defendant Sargent Warren prior to the attack, or against**

> **Defendant Heckler for failing to confiscate Inmate
> Lageese's boiler plate prior to the attack;**

The parties and the Court will use these designations in all future pleadings and orders
unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned
in the Complaint but not addressed in this Order is considered dismissed without
prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does
not plead "enough facts to state a claim that is plausible on its face").

### DISCUSSION

To establish a failure to protect claim under the Eighth Amendment, a plaintiff
must allege "(1) that he was incarcerated under conditions posing a substantial risk of
serious harm and (2) that the defendants acted with deliberate indifference to his health
or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth
Amendment, correctional officials have a constitutional duty to protect inmates from
violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But, "prisons are dangerous places.
Inmates get there by violent acts, and many prisoners have a propensity to commit more."
*Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot
be predicated "merely on knowledge of general risks of violence in a detention facility."
*Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that
"the defendant had actual knowledge of an impending harm easily preventable, so that
a conscious, culpable refusal to prevent the harm can be inferred from the defendant's
failure to prevent it." *Santiago*, 599 F.3d at 756. "[N]egligence, or even gross negligence

does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

Here, Plaintiff does not provide much information about what he might have told Defendant Warren before the attack, or if Warren should have realized there was a serious risk, but the affidavits from fellow inmates give context. Other inmates aver that given Lageese's behavior in the hours leading up to the attack, any officer should have realized that there was a serious and imminent threat. As such, Plaintiff will be allowed to proceed on Claim 1 against Defendant Warren.

Plaintiff's complaint also suggests that Defendant Heckler created a risk by allowing Lageese to keep an illegal hot pot that he ultimately used as a weapon. While this claim is much more attenuated than a traditional failure to protect claim, the Court will allow Plaintiff to proceed on this claim at this juncture.

By contrast, Plaintiff has not identified a sufficient claim against the other three defendants—Rachel Dodd (the Warden), Wexford Medical Group, or Officer Johnson. Johnson was the first one to apparently respond to Plaintiff's cell, and she directed him to get in the shower for his burns. An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.

2005).  There is no indication that Johnson could have done more or should have known to do differently when she responded to Plaintiff's cell.  It also appears that she escorted Plaintiff to the medical unit, and he was eventually taken to the hospital.  At most, these facts could perhaps give rise to a negligence claim against Johnson, but not a deliberate indifference claim.

As to Warden Dodd, Plaintiff does not mention her at all in his complaint.  The mere naming of a defendant, without factual allegations is not sufficient. Naming a person on the first page of the complaint, without giving any facts about what they personally did is not sufficient to state a § 1983 claim.  *See Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (it is appropriate to dismiss a defendant if he is named, but there is no sufficient allegation of personal involvement).  Additionally, to the extent he tries to hold Dodd responsible merely as a supervisor of the prison, this theory fails because there is no respondeat superior liability under § 1983.  *See, Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise.").  Here, Plaintiff has not identified anything that Defendant Dodd personally did other than hold a supervisory role, so his claims against Dodd are insufficient.

As for Wexford Medical Group, Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.  *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services*

*of City of New York*, 436 U.S. 658 (1978).  Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority.  *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).  Plaintiff does not present any allegations that mention Wexford or identify a harmful policy, practice, or custom, so Wexford is dismissed for failure to state a claim.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **GRANTED**.  There is no constitutional or statutory right to counsel in federal civil cases.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors—plaintiff's efforts to secure his own counsel, and his competence to represent himself given the difficulty of the case. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).  Here, Plaintiff has not provided proof of efforts to secure his own counsel, but he has indicated that English is not his primary language, and his complaint is understandable, but certainly not as clear as it could be.  Plaintiff alleges that he sustained very serious injuries, and his complaint suggests that he needs ongoing care.  Given the severity of the allegations, and to promote an efficient resolution of Plaintiff's claims, the Court finds it best to assign counsel to assist with this matter.  Counsel will be assigned by a separate order.

DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Sargent Warren and C/O Heckler. By contrast, Plaintiff failed to state a claim against Defendants Rachel Dodd, C/O Johnson, or Wexford Medical Group. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Rachel Dodd, C/O Johnson, and Wexford Medical Group because Plaintiff has failed to state a claim against them. The dismissal of these three Defendants is **without prejudice**.

The Clerk of Court is **DIRECTED** to prepare for Defendants Sargent Warren and C/O Heckler: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order, because this case will involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: November 13, 2023**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

Page 9 of 10

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.